**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James Ray RUSSELL, Defendant–Appellant.**

**No. 88–2154.**

United States Court of Appeals, Tenth Circuit.

June 19, 1990.

---

**1440**

Susan M. Otto, Asst. Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

Ted A. Richardson, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., and William S. Price, Asst. U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before McKAY, BRORBY, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Pursuant to a plea agreement with the United States, James Ray Russell pled guilty to an information charging him with the robbery of a federally insured bank by force, violence, and intimidation, in violation of 18 U.S.C. § 2113(a).[1] The district judge who sentenced Russell had previously declared the Sentencing Guidelines un-

---

**1.** § 2113(a) makes no mention of the use of a dangerous weapon in the commission of a robbery. That language appears in § 2113(d).

constitutional in an unrelated criminal proceeding, and accordingly he sentenced Russell to twenty years imprisonment under the provision of 18 U.S.C. § 2113(a), which was the maximum penalty permitted by the pre-Guidelines statute. Russell appealed the sentence thus imposed.

While Russell's appeal was pending in this court, the Supreme Court in *United States v. Mistretta*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) held the Sentencing Guidelines constitutional. In accord with *Mistretta*, we, in an unpublished order and judgment, vacated Russell's sentence on October 25, 1989, and partially remanded the case to the district court for resentencing under the Sentencing Guidelines.

On November 3, 1989, Russell was resentenced to imprisonment for 105 months. A transcript of the resentencing proceedings has been certified to this court and Russell now challenges his resentencing on two grounds.

As indicated, Russell pled guilty to an information charging a violation of 18 U.S.C. § 2113(a), which statute makes no mention of a dangerous weapon. However, an issue raised on original sentencing, and renewed on resentencing, was whether, regardless of the crime to which Russell had pled guilty, Russell had in fact possessed a firearm when he robbed the Grant Square Bank & Trust Company in Oklahoma City, Oklahoma. At the original sentencing, and again on resentencing, the district court found that Russell did possess a firearm when he robbed the bank, which, under the Guidelines, enhanced Russell's resentence by three levels. Russell challenges the district court's finding that he possessed a firearm when he robbed the bank, and the resulting enhancement of his sentence.

In *United States v. Kirk*, 894 F.2d 1162 (10th Cir.1990), we recently held that under the Sentencing Guidelines the government bears the burden of proof for "sentence increases," and the defendant has the burden of proof for "sentence decreases," and

that in each instance the burden is to produce evidence which preponderates. "Evidence which does not preponderate or is in equipoise simply fails to meet the required burden of proof." *Id.* at 1164.

Applying *Kirk*, it is now agreed that before Russell's sentence could be increased by three levels the government had the burden of establishing by a preponderance of the evidence that when Russell robbed the bank he was in possession of a firearm. The government's position is that it did preponderate on this issue, whereas Russell argues that the government did not meet its burden of proof.

Three witnesses testified at the sentencing hearing. The bank teller accosted by Russell testified that she did not actually see a gun. She stated that when she "turned around" she saw Russell in front of her and read his note, which said, "This is real. Come on." She testified that Russell also said, "This is real. Come on. Give me your money. Don't make me use it. If you touch anything, you're going with me." The teller testified that Russell asked her for a bag, and when she said she did not have a bag, Russell replied, "Just lay it up here then." The teller said she then started pushing currency towards Russell. She further stated that when Russell said, "Don't make me use it," that he "had a hold of his jacket."

The only other government witness was an F.B.I. agent who was involved in the investigation of the robbery. Russell was arrested at his residence shortly after the robbery. The F.B.I. agent testified that a search of Russell's residence disclosed some of the money taken in the robbery hidden under a cushion on a couch, and that next to this currency was a .38 caliber revolver. The agent acknowledged that Russell denied possessing the revolver at the time of the robbery.

The agent also recounted his conversation with Russell's wife, wherein she stated that she saw Russell "put it [the revolver] in his jacket pocket" shortly before they left their home to proceed to the bank.[2]

---

**2.** Russell's wife had diagrammed the bank which Russell robbed and drove Russell to and from the bank.

Russell admitted that he robbed the bank but stated that he did not possess any firearm when he robbed the bank. He acknowledged owning a revolver, which he said was a .22 caliber and not a .38 caliber revolver. However, he said after his wife went out to "warm up" the car, he slid the revolver under the sofa cushion and did not have it on his person when he robbed the bank. On cross-examination, Russell stated that he knew that a bank robbery "with a gun" was a "more serious" offense than a bank robbery "without a gun." He also testified that he did not recall telling the teller, "Don't make me use it. If you touch anything, you're going with me."

Based on this testimony, the district court found that Russell was in possession of a firearm when he robbed the bank and enhanced his sentence by three levels. We believe the evidence supports such finding. The fact that the teller did not actually see a gun does not necessarily end the matter. Nor does the fact that Russell denied having a gun with him at the time of the robbery end the matter. The evidence shows that Russell possessed a firearm minutes before the robbery and again very shortly after the robbery, and that during the robbery Russell, while patting his jacket pocket, said, "Don't make me use it. If you touch anything, you're going with me." Russell's statement to the teller is some evidence that he was armed. He indicated he was armed. The teller testified that she thought he was armed and complied promptly with all his requests. As indicated, after the robbery, a revolver was found alongside certain proceeds of the robbery. The district court's finding that the government had preponderated on the issue in dispute is not "clearly erroneous" and finds support in the record. *United States v. Beaulieu*, 893 F.2d 1177 (10th Cir.1990).

■ Russell also argues on appeal that the sentence imposed on resentencing was in violation of the Sentencing Reform Act of 1984. At resentencing, in response to an inquiry by defense counsel, the district judge announced his intention to depart upward from the calculated guideline range because of the "inadequacy of [Russell's] criminal history." For that reason, the district court departed upward from the Guideline Sentencing range of 51 to 63 months to a guideline range of 84 to 105 months and then imposed the maximum sentence within the enhanced guideline range, committing Russell to the custody of the Bureau of Prisons for a term of 105 months.

Russell sustained a burglary conviction in 1965, another burglary conviction in 1967, and an escape conviction in 1968, an escape which was effected while he was in custody on the 1967 burglary conviction. Russell does not contest the fact that he sustained these three convictions. However, under the Guidelines these three convictions were excluded from the criminal history computation because of the Sentencing Commission's fifteen-year limitation for prior felony convictions and confinements. *See United States Sentencing Commission Guidelines*, § 4A1.2(e). Notwithstanding the fifteen-year limitation, the district court enhanced Russell's criminal history score by adding three points for each of these three prior felonies.

Counsel for Russell concedes that the Guidelines vest a district court with some discretion to determine whether the criminal history computation, using the fifteen-year limitation, accurately reflects the defendant's criminal behavior. In this regard, the United States Sentencing Guidelines, § 4A1.3 provides as follows:

"If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range...."

Conceding, then, that under the Guidelines a district court has the power to depart upward from the guidelines range when the defendant's criminal history com-

putation, using the fifteen-year limitation, does not accurately reflect his criminal behavior, or the likelihood that he will commit future crimes, counsel argues that the facts of the instant case do not warrant any departure. We disagree.

The pre-sentence report indicates that Russell, then eighteen years of age, was arrested on October 20, 1965, on a burglary charge and that on November 24, 1965, he was sentenced to the Oklahoma State Penitentiary for two years by the Pittsburg County (Oklahoma) District Court. He was discharged from the penitentiary on that commitment on December 17, 1966. Two months later, on February 25, 1967, Russell was again arrested on a burglary charge and on February 27, 1967, he was sentenced to four years imprisonment in the Oklahoma State Penitentiary by the Haskell County District Court. While serving this sentence Russell effected an escape, but he was captured on or about August 10, 1968, and returned to the penitentiary. On August 10, 1968, Russell pled guilty to an escape charge and was sentenced to three years imprisonment in the penitentiary. On June 27, 1969, Russell was paroled on his second burglary conviction and rebilled on his escape conviction and sentence. He was discharged from the penitentiary on his escape sentence on April 29, 1971.

On March 25, 1972, Russell was arrested on a homicide charge and on August 30, 1975, was sentenced to 35 years in the state penitentiary upon his conviction for manslaughter. According to the pre-sentence report, Russell and an accomplice robbed an elderly victim and in the course of the robbery beat the victim inflicting mortal wounds. He was discharged from that incarceration on July 24, 1984.

In fixing Russell's criminal history score, the probation officer took into consideration Russell's conviction and commitment on the manslaughter charge, which was three points, and thus established a criminal history category of II. However, the probation officer added no points for the two burglary convictions, and the escape conviction, since all three were more than

fifteen years remote from his sentencing in the instant case. In this regard, the probation officer noted that "the defendant has numerous prior criminal convictions which did not count in computing the criminal history category. This factor may warrant an upward departure from the guideline range."

As indicated, the district court did make an upward departure based on the two burglary convictions and the conviction for escape, increasing Russell's criminal history score by nine points, i.e., three points for each conviction, which made a criminal history category of V. In so doing, the district court observed, *inter alia*, that "every time you [Russell] have been out of prison within a short period of time you have committed another offense" and also indicated that to restrict Russell's criminal history score to the manslaughter charge and ignore the three prior felony convictions because they occurred more than fifteen years prior to the instant sentencing would not fully and adequately reflect Russell's past criminal conduct or the likelihood that, when discharged from his robbery sentence, he will commit further offenses. In this general connection, the government points out that for much of the fifteen-year period preceding his current sentencing, Russell has been incarcerated on the manslaughter charge and suggests that the fact that Russell has committed no crimes while incarcerated should not inure to his benefit.

*United States v. White*, 893 F.2d 276 (10th Cir.1990) sheds light on the present proceeding. There the district court made an upward departure because *one* prior sentence was imposed as a result of *two* independent crimes committed on different occasions and also because the defendant had committed the instant offense while on bond for a prior charge. In upholding the upward departure, we approved a three-step review of an upward departure: (1) Do the circumstances cited by the district court justify a departure from the Guidelines? (2) Do the underlying facts support the circumstances cited by the district court for departure? And (3) Is the degree of departure reasonable?

Russell does not dispute the fact of the prior convictions which the district court considered in enhancing his sentence, nor, as we understand it, does counsel claim that the degree of departure was unreasonable. Counsel does challenge the use of the prior convictions beyond the fifteen-year limitation to enhance the sentence.

■ Where a sentencing judge bases his upward departure in his belief that a defendant's criminal history category score underrepresents the seriousness of his criminal history, our review thereof is plenary. In *White*, the cited reasons for upward departure were explicitly stated by the Sentencing Commission as appropriate grounds for departure. Such is not true in the instant case. However, in *White*, we noted that a sentencing court may also make an upward departure from the Guidelines on the basis of factors that the Commission has not explicitly stated to be appropriate grounds for departure. Such is our case.

It would appear that for eleven of the fifteen years preceding the present proceeding, Russell was in custody on the manslaughter charge. It would also appear that Russell was in custody from October 20, 1965 until April 29, 1971, except for two months. Eleven months after Russell was released on April 29, 1971, Russell was arrested on the manslaughter charge and was thereafter apparently in custody until his release on July 24, 1984. Four years later he was arrested on the present bank robbery charge. Such circumstance we believe justified the district court in going beyond the fifteen-year period. We agree with the district court that to limit Russell's criminal history to the fifteen years immediately preceding his present sentencing, when Russell has been confined for eleven of those fifteen years, would not "adequately reflect the seriousness of [his] ... past criminal conduct or likelihood that [he] ... will commit other crimes."

■ Under the Guidelines, a district court "may consider imposing a sentence departing from the otherwise applicable guideline range" if the "criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes...." When a person has been in custody for eleven out of the fifteen years prior to the commencement of a new criminal proceeding against him, his criminal history for that fifteen-year period may well have been diluted by the fact of such incarceration. In such circumstance, we believe a district court has the discretion to go beyond the fifteen-year limitation to determine the "seriousness of the defendant's past criminal conduct...." If the defendant has no criminal record beyond the fifteen-year period, such inures to his benefit. If, however, the defendant has an extensive criminal record beyond the fifteen-year period, as does Russell, who was apparently in custody on three separate felony convictions for seven of the eight years beyond the fifteen-year limitation, such record, under the Guidelines, may inure to his detriment.

In support of the foregoing, see, by way of example, *United States v. Carey*, 898 F.2d 642 (8th Cir.1990). In that case the district court enhanced the defendant's guideline range on the ground that his criminal history, with the fifteen-year limitation, did not adequately reflect the seriousness of his prior criminal history and the court considered three felony convictions which were beyond the fifteen-year limitation. In upholding the upward departure, the Eighth Circuit stated that the defendant's "serious criminal history is not adequately taken into account by his criminal history category and the Guidelines specifically allow an upward departure in such circumstances."

Judgment and sentence affirmed.