**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Lewis Walter HAGEDORN, Defendant–Appellant.**

No. 94–3034.

United States Court of Appeals, Tenth Circuit.

Oct. 18, 1994.

Marilyn M. Trubey (David J. Phillips, Federal Public Defender, with her on the brief), Branch Chief, Federal Public Defender's Office for the District of Kansas, Topeka, KS, for defendant-appellant.

Gregory G. Hough (Randall K. Rathbun, U.S. Atty., Topeka, KS, with him on the brief), Asst. U.S. Atty., Topeka, KS, for plaintiff-appellee.

Before TACHA, LOGAN, and EBEL, Circuit Judges.

TACHA, Circuit Judge.

Defendant Lewis Hagedorn appeals his sentence after he pleaded guilty to failing to file a tax return in violation of 26 U.S.C. § 7203. Defendant contends that the district court erred under the United States Sentenc-

ing Guidelines (U.S.S.G.) in two ways. First, defendant objects to the district court's original calculation of his base offense level at eight. Second, defendant appeals from the decision to apply former U.S.S.G. § 2T1.2.(b)(1) (current version at U.S.S.G. § 2T1.1.(b)(1)). This guideline raises the base either two levels or to a minimum of level 12 if the defendant failed to report income exceeding $10,000 per year from criminal activity. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

## I. BACKGROUND

In late 1983, defendant sought a loan for his business, Little Apple. A friend of the defendant put him in touch with Vincent Perri in Miami, Florida. Perri was associated with Eduardo McIntosh of Scituate, Massachusetts, in a business called the Centurion Group. In order to receive the loan, defendant paid an up-front, nonrefundable fee of $4,000. Following this initial contact, defendant opened an office of the Centurion Group in Manhattan, Kansas, and became a Centurion broker. He also took the title of President. In his role as a broker, defendant received loan applications, which he forwarded to Centurion. The loan applications included a nonrefundable advance fee of 0.2 percent of the loan amount. Over time, defendant collected $84,025 in advance fees for Centurion.

The customers' loans never arrived. When customers complained, defendant contacted Perri, who then contacted McIntosh. In each of these conversations, defendant was given several excuses why the loans were not yet processed. Eventually, Perri and defendant broke away from McIntosh, whom Perri believed to be a fraud. Perri and Hagedorn attempted to procure the loan money from other sources but were unsuccessful.

In a 15–count indictment, the government charged defendant, Perri, and McIntosh with mail fraud and unlawfully transmitting or transferring money taken by fraud through interstate commerce.[1] Perri and McIntosh each agreed to plead guilty to one count of mail fraud. In a separate plea agreement, defendant pleaded guilty to failing to file a 1988 corporate tax return in violation of 26 U.S.C. § 7203. Under the terms of the agreement, defendant agreed to repay the advance fees to the victims of the fraud while the government agreed to dismiss all 15 counts of the original indictment.

After pleading guilty, defendant made two objections to the presentence investigation report (PSIR). Each objection turned on the application of former U.S.S.G. § 2T1.2. Defendant claimed that the report calculated the tax deficiency incorrectly because it did not deduct defendant's expenses. The PSIR computed the tax deficiency at $11,893.75 and yielded a base level of eight. Defendant contended that a proper calculation would result in a base level of six.[2]

The district court did not rule on this objection, however, because its application of former U.S.S.G. § 2T1.2.(b)(1) rendered the outcome moot. Section 2T1.2(b)(1) applied to defendants failing to report income exceeding $10,000 from criminal activity.[3] The guideline instructed the sentencing judge to increase the offense level by two. If the augmented offense level was less than twelve, the sentencing judge was required to ratchet the offense level up to twelve. The district court found that section 2T1.2.(b)(1) applied to defendant. It was therefore irrelevant

---

1. Defendant was accused of eleven violations of 18 U.S.C. §§ 2, 1341 and four violations of 18 U.S.C. §§ 2, 2314.

2. According to former U.S.S.G. § 2T1.2(a)(1), the base offense level for failure to file a tax return is found by subtracting one level from the table provided in former U.S.S.G. § 2T4.1. Turning to §§ 2T4.1(C) and 2T4.1(D) and subtracting one level, the proper base level for tax losses between $10,000 and $20,000 is eight. In contrast, the base level for tax losses between $2,000 and $5,000 is six.

3. The guideline reads in part:

   (b) Specific Offense Characteristics
   (1) If the defendant failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.

   U.S.S.G. § 2T1.2(b)(1) (1987 version).

whether defendant's base level was six or eight; in either case, the base level would be increased to twelve. The district court then subtracted two points for acceptance of responsibility, leaving defendant with a base level of ten. *See* U.S.S.G. § 3E1.1(a). Defendant was sentenced to six months' imprisonment, followed by one year on supervised release.

## II.  DISCUSSION

Defendant claims that the district court erred in finding that the unreported income came from criminal activity. We approach this question deferentially because "we review the district court's factual findings for clear error." *United States v. Miller*, 987 F.2d 1462, 1465 (10th Cir.1993).

■■■ The government bears the burden of proof when it seeks to increase a sentence. *United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir.1990). To meet this burden, the government must prove the proposition by a preponderance of the evidence. *United States v. Russell*, 905 F.2d 1439, 1441 (10th Cir.1990). Under the version of the Guidelines used in this case, the government needed to prove that the defendant participated in "criminal activity." U.S.S.G. § 2T1.2.(b)(1) (1987 version). The Guidelines define criminal activity as " 'racketeering activity' as defined in 18 U.S.C. § 1961."[4] U.S.S.G. § 2T1.2. comment. 1 (amended 1990).

The original indictment charged defendant with violations of two sections included within section 1961's rubric of racketeering activity. Former 18 U.S.C. § 1341 (amended 1989, 1990) prohibits frauds and swindles. The other statute, 18 U.S.C. § 2314 (amended 1988), forbids transportation of stolen goods or moneys. The government also claimed that defendant could be liable as a principal for these crimes under 18 U.S.C. § 2, which punishes as a principal those aiding or abetting in the commission of a crime.

■■■ Under any of these definitions of racketeering activity, the government must prove that defendant possessed an intent to commit the crime. In order to establish a violation of § 1341, the government must

show that the defendant either had guilty knowledge or that his "indifference to the truth of statements made to induce others to action amounts to fraudulent intent." *United States v. Themy*, 624 F.2d 963, 965 (10th Cir.1980). Fraudulent intent is also a necessary element of section 2314. *United States v. Brantley*, 786 F.2d 1322, 1329 (7th Cir.), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986); *United States v. Miller*, 725 F.2d 462, 468 (8th Cir.1984). In addition, the government must show that the defendant " 'share[d] in the intent to commit the offense' " to show liability as a principal under section 2. *United States v. Self*, 2 F.3d 1071, 1089 (10th Cir.1993) (quoting *United States v. Smith*, 838 F.2d 436, 441 (10th Cir.1988), *cert. denied*, 490 U.S. 1036, 109 S.Ct. 1935, 104 L.Ed.2d 407 (1989)); *see also White v. United States*, 366 F.2d 474, 476 (10th Cir.1966) ("Aiding and abetting implies guilty knowledge.").

In this case, the government clearly did not meet its burden of establishing that defendant possessed the necessary mental state to commit one of these crimes. In a colloquy with the district court at his Change of Plea Hearing, defendant admitted that the government could prove all of the allegations claimed in the Information beyond a reasonable doubt. The Information states that defendant "*participated* in the advanced fee scheme which is described ... in the indictment." At a minimum, it is apparent that defendant participated in the crime: He obtained the funds and forwarded the applications to others in the Centurion organization. Participation, however, does not automatically include knowledge of the scheme.

The district court relied on the indictment to show that the defendant had violated section 1961. As part of his plea arrangement, however, defendant only admitted to the contents of the Information; he did not admit to committing the offenses contained in the Indictment. We decline to place emphasis on the indictment when looking for proof that a crime has been committed. "The purpose of an indictment is to inform the defendant of the nature of the offense charged." *Smith v.*

---

**4.** Section 1961 has been amended twice since its application to this case.

*United States*, 273 F.2d 462, 466 (10th Cir. 1959), *cert. denied*, 363 U.S. 846, 80 S.Ct. 1619, 4 L.Ed.2d 1729 (1960). "[An indictment] is not evidence that the offense charged was committed." *United States v. Glaziou*, 402 F.2d 8, 15 (2nd Cir.1968), *cert. denied*, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969). Because the government offered no other evidence of racketeering activity, we find that the government did not show by a preponderance of the evidence that defendant violated section 1961. Accordingly, defendant's sentence cannot be increased under section 2T1.2(b)(1).

Having decided that section 2T1.2(b)(1) does not apply, the question of defendant's appropriate original base level is no longer moot. Whether defendant's base level should be six or eight is a factual determination that the district court must resolve. We therefore remand the case for resentencing in accordance with this opinion.

### III. CONCLUSION

The decision of the trial court is **REVERSED** and defendant is **REMANDED** for resentencing.