**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Fletcher SAPP and Ronald Sapp,**
**Defendants–Appellants.**

**Nos. 94–3077 to 94–3079.**

United States Court of Appeals,
Tenth Circuit.

April 18, 1995.

Robert A. West, Yonke, Arnold, Newbold & Regan, P.C., Kansas City, MO (Kevin E.J. Regan, with him on the briefs), for appellants.

Tanya J. Treadway, Asst. U.S. Atty., Kansas City, KS (Randall K. Rathbun, U.S. Atty., with her on the brief), for appellee.

Before MOORE, TACHA, Circuit Judges, and ALSOP,* District Judge.

* The Honorable Donald D. Alsop, Senior District Judge, United States District Court for the District of Minnesota, sitting by designation.

TACHA, Circuit Judge.

The government charged defendants with violating 18 U.S.C. §§ 1014 and 1344(2). A jury convicted defendants of violating only section 1344(2). Defendants were sentenced and now appeal to this court. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

Defendants are brothers who jointly operated a number of businesses. In 1990 defendants began experiencing financial difficulties. After defendants defaulted on some of their loans at First State Bank ("First State"), they began negotiating for new loans from Midland Bank ("Midland") to pay off First State. At the same time, defendants attempted to persuade First State to discount their delinquent loans.

Eventually First State agreed to discount defendants' outstanding loans by $279,000, leaving them $280,000 in debt. Meanwhile, defendants reached an agreement with Midland that allowed "$850,000 to be made available to [defendants] to settle pending litigation and their indebtedness at First State." In order to draw on the funds, defendants needed both Midland's approval and releases of their indebtedness with other creditors.

Defendants then forged a letter from First State to Midland. The forged letter requested payment of approximately $405,000 to settle defendants' debt to First State—$125,000 more than defendants actually owed. Before disbursing the loan monies, however, Midland discovered the fraud. When confronted with the forgery, defendants admitted forging the letter. They also indicated that they planned to use the extra cash to pay off a loan secured by a relative's certificate of deposit.

A jury found defendants guilty of bank fraud in violation of 18 U.S.C. § 1344(2) but acquitted them of making a false statement to a federally insured financial institution in violation of 18 U.S.C. § 1014. The district court sentenced each defendant to twenty-one months in prison and ordered them to pay $279,000 in restitution. Defendants now appeal to this court.

## II. DISCUSSION

### A.

We first examine defendants' contention that the district court misapplied the appropriate standard of law. Defendants state that section 1344(2) requires the government to prove that defendants placed the bank "at risk." We review this legal challenge de novo. United States v. Davis, 965 F.2d 804, 809 (10th Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993).

Section 1344 provides the following:
Whoever knowingly executes, or attempts to execute, a scheme or artifice—
(1) to defraud a financial institution; or
(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Defendants base their contention on this court's decision in United States v. Young, 952 F.2d 1252 (10th Cir.1991). In Young, we analyzed a conviction under clause (1) of section 1344. We stated that, "[t]o support a § 1344 conviction the government does not have to prove the bank suffered any monetary loss, only that the bank was put at potential risk by the scheme to defraud." Id. at 1257. Because this language was not explicitly limited to section 1344(1) claims, defendants claim that the government must prove that the bank was "at risk" under section 1344(2) as well.

We disagree with defendants' reading of Young. In Young we expressly noted that victimizing a bank is "a requirement of § 1344(1) that is not necessary under § 1344(2)." Id. at 1256 n. 4. Requiring the government to prove different elements under each section is logical given the language of the statute. "[C]lause (1) ... expressly requires that the scheme be one 'to defraud,' while clause (2) does not but rather extends to any knowingly false representation."

*United States v. Medeles,* 916 F.2d 195, 199 (5th Cir.1990).[1] Thus, clause (1) focuses on the conduct as it affects the financial institution, while clause (2) emphasizes the conduct of the defendant. We therefore hold that the government need not prove that a defendant put a bank "at risk" to sustain a conviction under section 1344(2).[2]

### B.

Defendants next contend that the evidence was insufficient to support a conviction under section 1344(2). "In considering a challenge to the sufficiency of the evidence, we review the entire record in the light most favorable to the government to determine whether the evidence is such that a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Dirden,* 38 F.3d 1131, 1142 (10th Cir.1994). To the extent that the evidence conflicts, "we accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses." *Id.*

■ Under section 1344(2), "if a defendant knowingly provided materially false information in order to induce the loan, the crime is complete." *United States v. Hollis,* 971 F.2d 1441, 1452 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993). Thus, we have held that a defendant violates section 1344(2) if she applies loan proceeds in a way contrary to an agreement with the bank, *see United States v. Haddock,* 956 F.2d 1534, 1552 (10th Cir.), *aff'd on other grounds,* 961 F.2d 933 (10th Cir.) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992), even when there is no actual pecuniary loss to the bank, *see United States v. Kelley,* 929 F.2d 582, 585 (10th Cir.), *cert. denied,* 502 U.S. 926, 112 S.Ct. 341, 116 L.Ed.2d 280 (1991).

■ In this case, a reasonable jury clearly could find defendants guilty of bank fraud. Defendants argue that they could have properly withdrawn the $850,000 from Midland for their personal use and therefore could not

be guilty of bank fraud. The jury considered and rejected this contention. A bank officer testified that two conditions needed to be met before any funds were released to defendants: (1) the bank had to approve the disbursement, and (2) defendants had to submit the appropriate releases from their other creditors. Although defendants disputed the bank officer's testimony at trial, their decision to forge a release supports the bank officer's position. After seeing the false document that claimed to "release" defendants from their obligations, the jury could reasonably conclude that defendants were required to submit appropriate documentation before gaining access to the authorized funds and that they submitted the forged document to obtain the additional funds.

Viewing the evidence in the light most favorable to the government, we conclude that the forged letter could reasonably be viewed as a false representation seeking to obtain funds from the bank. We therefore hold that the evidence was sufficient to convict defendants of bank fraud under section 1344(2).

### C.

■ Defendants also contend that the district court should have instructed the jury on a "good faith" defense. In reviewing jury instructions for error, we examine them in their entirety to "determine whether the instructions, examined in the light of the record as a whole, fairly, adequately, and correctly state the governing law and provide the jury with an ample understanding of the applicable principles of law and factual issues confronting them." *United States v. Denny,* 939 F.2d 1449, 1454 (10th Cir.1991). Of course, a defendant is entitled to a "theory of the defense" instruction only if the instruction is "supported by sufficient evidence for a jury to find in defendant's favor." *United States v. Davis,* 953 F.2d 1482, 1492 (10th Cir.), *cert. denied,* 504 U.S. 945, 112 S.Ct. 2286, 119 L.Ed.2d 210 (1992).

---

**1.** *Medeles* interpreted a prior version of section 1344 which, for purposes of the case at bar, was essentially the same as the current version.

**2.** Because we determine that a finding that the bank was "at risk" is unnecessary under section 1344(2), defendants' contention that the district court refused to issue an "at risk" instruction to the jury is inapposite.

Defendants' proffered instruction would have informed the jury that defendants "contend that neither is guilty of the crime charged because they were not attempting to defraud the Midland Bank." Viewing the instructions that were given as a whole, we conclude that the failure to give this instruction was not error. While the district court did not deliver the exact instruction requested by defendants, it did instruct the jury on the good faith defense. Noting that good faith is a complete defense to the charges, the court asked the jury to consider the evidence bearing on the defendants' state of mind. The instruction allowed the jury to determine that defendants possessed "an intention to avoid taking unfair advantage of another." Defendants' proposed instruction would not have added to the necessary legal framework in any way. We therefore conclude that the failure to give the proffered jury instruction was not error.

### D.

In sentencing defendants, the district court determined that the loss to First State was relevant conduct under United States Sentencing Guidelines (U.S.S.G.) § 1B1.3. The court correspondingly increased defendants' offense level for First State's loss. Defendants contend that increasing their offense level was improper. "We review the court's factual findings supporting calculation of loss under the clearly erroneous standard, but review de novo questions of law regarding the application of the Sentencing Guidelines." *United States v. Lyons*, 992 F.2d 1029, 1032 (10th Cir.1993). When the government seeks to increase a defendant's base offense level, it must show that the relevant conduct occurred by a preponderance of the evidence. *United States v. Hagedorn*, 38 F.3d 520, 522 (10th Cir.1994).

The Sentencing Guidelines allow a court to look to "relevant conduct" when sentencing a defendant. *Id.* § 1B1.3. Section 1B1.3 includes in its purview "all harm that resulted from the acts and omissions specified in [the Guideline], and all harm that was the object of such acts and omissions." *Id.* § 1B1.3(a)(3). Relevant conduct may include conduct for which defendant was not convict-

ed. *See United States v. Underwood*, 982 F.2d 426, 429 (10th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 3043, 125 L.Ed.2d 729 (1993).

In cases involving loan fraud, the loss for Sentencing Guidelines purposes "is the actual loss to the victim (or if the loss has not yet come about, the expected loss)." U.S.S.G. § 2F1.1, comment. (n.7(b)). In this case the district court determined that there was no actual loss to Midland, the bank to which the forged letter was sent. The court therefore did not enhance defendants' sentences for any activity concerning Midland. The court did find, however, that defendants' conduct resulted in a loss of $279,000 to First State. Because defendants' negotiations with the two banks were "simultaneous," the court held that "[t]rial evidence and testimony established that First State Bank would not have agreed to discount the defendants' loan obligations by $279,000 if it were not for their deception regarding their capacity to borrow from Midland to repay those obligations."

Our review of the record reveals no evidence that this conclusion was clearly erroneous. A letter from a First State official to defendants shows that defendants told First State that their borrowing capacity was $200,000 when it actually was $850,000. A First State officer testified on multiple occasions that he would not have discounted the loans if he had known that defendants had access to $850,000. We therefore hold that the court properly enhanced defendants' sentences for the loss to First State.

### E.

The court ordered defendants to pay restitution in the amount of $279,000 to First State. Defendants dispute the court's authority to order this award. "While we review *de novo* the legality of a sentence of restitution, the district court's findings of fact will not be disturbed unless clearly erroneous." *United States v. Herndon*, 982 F.2d 1411, 1420 (10th Cir.1992).

A federal district court is statutorily authorized to order restitution to "any victim of [an] offense" enumerated in title 18. 18

U.S.C. § 3663(a)(1). The Supreme Court has held that this statute allows "an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 413, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990); *see also United States v. Wise*, 990 F.2d 1545, 1548 (10th Cir.1992); *United States v. Wainwright*, 938 F.2d 1096, 1098 (10th Cir.1991). When the criminal conduct includes a scheme, conspiracy, or pattern of criminal activity, a victim is "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663(a)(2).

 In this case the jury found that defendants participated in a scheme. The district court instructed the jury that, to convict defendants of a section 1344 offense, the government must prove defendants' participation in a "scheme to obtain the money or other property owned by or under the control of a financial institution." By convicting defendants, the jury plainly concluded that a scheme existed. In its factual findings for sentencing purposes, the district court found that the forged letter underlying the bank fraud conviction "fulfilled the link for the common scheme and plan of the two simultaneous sets of negotiations resulting in the actual loss to First State." Thus, the district court determined that the acts underlying the conviction caused the loss to First State. *Cf. United States v. Diamond*, 969 F.2d 961, 966 (10th Cir.1992) (finding no causal link between defendant's actions and loss). These findings are supported by the record. The district court's order of restitution was proper.

### F.

Finally, defendants claim that the district court erred by refusing to hold an evidentiary hearing on sentencing issues. Defendants have not shown, however, that they requested such a hearing. At sentencing, defendants' lawyers stated that defendants would make statements to the court but did not need to testify. Defendants subpoenaed a bank officer but then did not ask to call him as a witness.[3] We therefore find that the district court did not err in failing to hold an evidentiary hearing.

### III. CONCLUSION

The district court applied the appropriate standard of law in instructing the jury on bank fraud, and the evidence was sufficient to convict defendants of that crime. Defendants made no request for an evidentiary hearing, and the district court's sentencing determinations were proper. We therefore **AFFIRM.**

---

**3.** When addressing the court, one of defendants' lawyers stated:

> [Q]uite frankly, at one point during the objection process, it was—we gave serious thought to needing testimony to clear up a matter that we thought was not really in dispute, and I don't know that it is, in fact, in dispute. With that in mind, however, [the bank officer], who testified at the trial, has been subpoenaed this morning. He's here in the courtroom, but we do not anticipate calling him unless the Court has questions for him.... I have no objection to him being excused.

After counsel informed the court of this decision, the district court excused the bank officer by stating that it was not "going to have any evidentiary hearing."