F I L E D
United States Court of Appeals
Tenth Circuit

DEC 18 1998

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FLETCHER SAPP; RONALD SAPP,

Defendants-Appellants.

No. 97-3384
(D.C. No. 97-CV-3181-DES)
(D. Kan.)

---

**ORDER AND JUDGMENT** [*]

---

Before **BRORBY** , **BRISCOE** , and **LUCERO** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9.  The case is

therefore ordered submitted without oral argument.

Brothers Fletcher and Ronald Sapp were convicted of bank fraud in

violation of 18 U.S.C. § 1344(2), sentenced to serve twenty-one months in prison

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

and five years on supervised release, and ordered to pay $279,000 in restitution.

This court affirmed their convictions and sentences on direct appeal. *See United*

*States v. Sapp*, 53 F.3d 1100 (10th Cir. 1995) ("*Sapp I"*). Defendants

subsequently filed a motion to vacate, set aside or correct their sentences pursuant

to 28 U.S.C. § 2255 and a motion for a new trial pursuant to Fed. R. Crim. P. 33.

The district court consolidated the two motions and denied them. *See United*

*States v. Sapp*, 989 F. Supp. 1093 (D. Kan. 1997) (*"Sapp II"*). Because the

district court did not hold an evidentiary hearing and make factual findings, we

review its denial of defendants' § 2255 motion de novo. *See United States v.*

*Powell*, ___ F.3d ___, No. 97-1449, 1998 WL 730159, *1 (10th Cir. Oct. 20,

1998). We review its denial of the motion for a new trial for an abuse of

discretion. *See United States v. Patterson*, 41 F.3d 577, 579-80 (10th Cir. 1994).

The district court summarized the background leading to defendants'

convictions as follows:

> The defendants are brothers who jointly operated a number of
> businesses. In 1990, the defendants began experiencing financial
> difficulties. After the defendants defaulted on some of their loans at
> First State Bank ("First State"), they began negotiating for
> additional funds from Midland Bank ("Midland") to pay off some of
> their debts at First State. At the same time, defendants attempted to
> persuade First State to discount some of their delinquent loans.
>
> First State agreed to discount some of defendants' outstanding
> loans by approximately $279,000, leaving them $280,000 in debt on
> the discounted loans, which First State thought would be paid by
> funds that the Sapps were going to obtain from Midland. This

agreement also allowed the defendants to bring other loans current and to turn over the collateral in full satisfaction of other loans. Meanwhile, defendants reached an agreement with Midland that allowed "$850,000 to be made available to [defendants] to settle pending litigation and their indebtedness at First State." [1] In order to draw on the funds, the Midland agreement stated that the defendants needed both Midland's approval and releases of their indebtedness with other creditors.

Defendants then forged a letter from First State to Midland. The forged letter requested payment of approximately $405,000 to settle defendants' debt to First State, which was $125,000 more than was needed to pay off the discounted loans. Before disbursing the loan monies, however, Midland discovered the discrepancy between the amount requested in the letter and the amount First State expected the Sapps to request to pay off the discounted loans. When confronted with the forgery, the defendants admitted forging the letter.

*Sapp II*, 989 F. Supp. at 1097-98.

Defendants raise the following arguments on this appeal: (1) defendants were denied their rights to effective assistance of trial counsel by counsel's failure to call certain rebuttal witnesses and to impeach a government witness; (2) counsel was ineffective due to a conflict of interest resulting from his firm's past representation of Midland and one of its officers; (3) the government failed to disclose material exculpatory evidence; (4) the government presented evidence

---

[1] This transaction was only a portion of the overall loan agreement dated February 7, 1991, between defendants, Ruth Sapp, Janet Sapp, businesses the Sapps owned or controlled, and Midland. The overall loan agreement involved four separate loans totaling $15,450,000. The $850,000 was made available to Fletcher and Ron as part of a loan for $2,000,000 for which the borrowers were Fletcher and Ruth Sapp.

it knew or should have known was false; (5) the district court abused its discretion in failing to grant a new trial based on newly discovered evidence; and (6) the district court abused its discretion by refusing to allow discovery or hold an evidentiary hearing.

As the district court recognized, and the government on appeal emphasizes, most of defendants' arguments revolve around their claim that they had virtually unfettered access to the $850,000 and that the ineffectiveness of their counsel and the government's improper actions prevented the jury from understanding this fact. As we noted in rejecting defendants' claim of insufficient evidence on direct appeal, defendants presented this theory of defense and the jury rejected it:

> Defendants argue that they could have properly withdrawn the $850,000 from Midland for their personal use and therefore could not be guilty of bank fraud. The jury considered and rejected this contention. A bank officer [Bruce Rhoades] testified that two conditions needed to be met before any funds were released to defendants: (1) the bank had to approve the disbursement, and (2) defendants had to submit the appropriate releases from their other creditors. Although defendants disputed the bank officer's testimony at trial, their decision to forge a release supports the bank officer's position. After seeing the false document that claimed to "release" defendants from their obligations, the jury could reasonably conclude that defendants were required to submit appropriate documentation before gaining access to the authorized funds and that they submitted the forged document to obtain the additional funds.
>
> Viewing the evidence in the light most favorable to the government, we conclude that the forged letter could reasonably be viewed as a false representation seeking to obtain funds from the bank. We therefore hold that the evidence was sufficient to convict defendants of bank fraud under section 1344(2).

*Sapp I*, 53 F.3d at 1103. Thus, critical to our affirmance of defendants' convictions, and our present analysis of their claims, were the jury's findings that they were required to submit valid and appropriate documentation to draw on the loan, and that they submitted forged documentation.

　　1.　*Ineffective counsel for failure to present rebuttal or impeachment testimony*

To establish a claim of ineffective assistance of counsel, defendants must show both that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced their defense. *See Strickland v. Washington*, 466 U.S. 668, 687, 690 (1984). To prove prejudice, defendants must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Rogers v. United States*, 91 F.2d 1388, 1392 (10th Cir. 1996) (citations and quotations omitted), *cert. denied*, 117 S. Ct. 1000 (1997).

Defendants contend that their trial counsel was ineffective for failing to present the testimony of Lee Greif, Chris Henry, James Wirkin and Brian McCallister, who they contend were the principal negotiators of the loan agreement between the Sapps and Midland, and the testimony of certified public

accountant Larry Morris. They contend that Greif, Henry, Wirkin and/or McCallister would have testified that Midland agreed to loan the money to the Sapps because it partially caused their financial problems, that the Sapps had a right to the full $850,000, that any surplus remaining after First State and other creditors were paid would be disbursed to the Sapps, and that Bruce Rhoades was not involved in negotiating the Midland-Sapp agreement. They also contend that counsel should have impeached Rhoades' testimony generally with the fact that he was being investigated by the FDIC and eventually was banned from banking, and his specific testimony implying that Midland intended the entire $850,000 to go to First State with contrary testimony.

Defendants fail to show, however, how this proposed testimony or impeachment would have affected the jury's findings that they were required to submit appropriate documentation to obtain funds from Midland and they submitted forged documentation. Rhoades did testify that Midland had to approve loan disbursements and that releases were required, but he was essentially repeating what the loan agreement stated. [2] Thus, his testimony on this point was not seriously impeachable.

---

[2]    The loan agreement stated that disbursements of any part of the $850,000 "shall be subject to approval by Bank [Midland], and the submission by Borrowers [the Sapps] of appropriate court orders or releases indicating satisfaction of Borrowers' debts to their creditors. The surplus shall be disbursed to Borrowers." Appellee's Suppl. App. at 529.

The only evidence directly relating to the release that defendants contend counsel should have presented is Henry's proposed testimony that "[i]t was contemplated by the parties to the Loan Agreement that the 'release' language as pertains to the Sapps debt at [First State] would be satisfied by copies of the notes marked 'Paid' from [First State], in the normal course of business, after receipt by [First State] of wired funds from [Midland]." Appellants' App. Vol. I at 43. Defendants thus do not challenge the jury's finding that the agreement required the submission of "appropriate documentation" as a material condition for disbursement of the funds. At most, they contend that counsel could have presented evidence indicating that documentation submitted after the disbursement could satisfy this condition. They have not, however, shown that the timing of the submission of the documentation was critical to the jury's decision (or our affirmance on direct appeal). More importantly, they have not shown that anything counsel could have done would have affected the jury's implicit finding that they intended the forged release to serve as the required documentation. Indeed, we can see no reason why defendants, who admit they participated in the negotiation of the agreement themselves and presumably understood its requirements, would have drafted the forged letter *as a release* had

they not intended it to serve as the documentation required by the agreement. [3]

We thus agree with the district court that defendants have not met their burden of proving prejudice from counsel's failure to call these witnesses or to further impeach Rhoades.

Defendants also contend that counsel should have presented testimony from Wirkin, Henry, McCallister and Morris to impeach the testimony of David Herndon, First State's president. They contend that Wirkin, Henry and McCallister would have testified that it was immaterial to Herndon where the Sapps obtained the funds to pay off their various First State loans. They also contend that Morris would have testified that the forged letter accurately reflected

---

[3]    The letter defendants forged stated in part as follows:

> For the payment of $405,014.88 dollars [sic], the following loans
> will be paid off, or brought current. Upon receipt of this payment,
> both parties hereby mutually release each party from any and all
> claims each may have, liquidated or unliquidated, known or unknown
> through the date of payment . . . .
>
> . . . .
>
> The above numbers and agreements are hereby acknowledge [sic] and
> agreed to, and this request is hereby submitted for payment to
> Midland Bank of Kansas.

Appellee's Suppl. App. at 548-49.

the terms of their agreement with First State, although they fail to explain what Morris' specific testimony would have been. Counsel did present evidence and argument to this effect at trial, including correspondence from Herndon indicating that the source of funds did not matter and that First State subsequently settled some of defendants' delinquent loans on terms similar to those contained in the forged letter. Counsel is not ineffective for failing to present cumulative evidence. *See Medina v. Barnes*, 71 F.3d 363, 367 (10th Cir. 1995). Again, defendants have failed to show that presentation of this evidence would likely have changed the outcome of the trial, and we agree with the district court that this ineffective counsel claim fails because they have not met their burden of proving prejudice.

*2. Ineffective counsel due to conflict of interest*

Defendants claim that their trial counsel was ineffective because of a conflict of interest due to his firm's prior representation of Midland and Midland officer, Lee Greif. Because they did not raise this objection at trial, they must show that an actual conflict of interest adversely affected their counsel's performance. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). "An actual conflict of interest results if counsel was forced to make choices advancing other interests to the detriment of his client. Without a showing of inconsistent interests, any alleged conflict remains hypothetical, and does not constitute

ineffective assistance." *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998) (citation omitted). "[C]ounsel's performance is adversely affected by an actual conflict of interest if a specific and seemingly valid or genuine alternative strategy was available to defense counsel, but it was inherently in conflict with his duties to others . . . ." *United States v. Migliaccio*, 34 F.3d 1517, 1526 (10th Cir. 1994) (quotation omitted).

Defendants contend that because of his conflict of interest, counsel failed to present evidence regarding the reason that Midland agreed to loan the money to the Sapps in the first place--i.e., "that the Sapps' indebtedness at First State Bank was only part of the mutual consideration [for the loan]; the funds were intended to enable the Sapps to pay other creditors and to compensate them for damage they suffered through [Midland officer] Greif's unlawful conduct." Appellants' Br. at 31. In other words, defendants contend that counsel should have thrown some mud at Midland to show that, in agreeing to loan money to the Sapps, it was not "an innocent business institution motivated by a desire to save a financially troubled customer." *Id.* at 32. We agree with the district court that this strategy "would not negate the defendants' conduct in forging the letter," and that given the basis for defendants' convictions, they "have not shown how this would be a plausible alternative defense strategy." *Sapp II*, 989 F. Supp. at 1101. We thus reject their claim of ineffective counsel due to a conflict of interest.

*3. Brady violation*

Defendants contend that the government violated the dictates of *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose evidence favorable to them. To establish a *Brady* violation, defendants must prove that "the prosecution suppressed the evidence, the evidence would have been favorable to [them], and the suppressed evidence was material." *Smith v. Roberts*, 115 F.3d 818, 820 (10th Cir. 1997) (quotation omitted). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (quotation omitted).

The evidence defendants claim the government should have produced was a criminal report regarding their forgery filed by David Herndon with the FDIC and evidence regarding FBI and FDIC investigations of Bruce Rhoades. Although the district court addressed the Herndon report on the merits, we may affirm on any basis supported by the record. *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994). Defendants admit they were aware of the report during the trial, as there were "passing references to the report by defense counsel in cross-examination of Herndon." Appellants' Br. at 36. In the district court, the government contended that defendants were procedurally barred from raising this issue under *United States v. Frady*, 456 U.S. 152, 167-68 (1982), because they

failed to show cause for failing to raise it on direct appeal and could not show resulting prejudice. *See* Appellants' App. at 189-90. In response to the government's contention, defendants did not attempt to show cause for failing to raise this issue earlier. *See* Appellants' App. Vol. I at 285-87. We therefore conclude that the issue is procedurally barred and will not consider it.

It is not clear whether Rhoades was even being investigated at the time of trial and whether the government had any evidence on this matter to disclose. Defendants therefore want discovery on this issue. However, as we noted earlier and the district court concluded, using this information to impeach Rhoades would not have affected the outcome of the trial. The evidence therefore was not material under *Brady*.

### 4. *Presentation of perjured testimony*

Defendants contend that the government presented testimony by Rhoades and Herndon that it knew or should have known was false. Again, while the district court addressed defendants' claims on the merits--and we have no reason to question its analysis in this regard--the government argued in the district court that this claim was procedurally barred because defendants failed to raise it on direct appeal. In response, defendants did not present any reason justifying this failure. We therefore conclude this claim is procedurally barred and will not consider it.

5. *Newly discovered evidence*

Defendants contend that three pieces of evidence are newly discovered and warrant a new trial. To justify a new trial based on newly discovered evidence, "the alleged newly discovered evidence [must] be (1) more than impeaching or cumulative, (2) material to the issues involved, (3) such that it would probably produce an acquittal, and (4) such that it could not have been discovered with reasonable diligence and produced at trial." *United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir.), *cert. denied*, 119 S. Ct. 87 (1998).

Defendants contend that two pieces of newly discovered evidence relating to Bruce Rhoades' testimony warrant a new trial. The first is his affidavit in which, they contend, he recanted his trial testimony. In his affidavit, Rhoades did not recant, in the sense that he specifically withdrew or repudiated, any trial testimony. He did say that he was not a party to the negotiation or drafting of the loan agreement, while at trial, he answered "[b]asically, yes" to the question "[d]o you remember negotiating the terms of this [overall] agreement with the defendants." Appellee's Suppl. App. at 566. [4] The district court found that, because Rhoades admitted on cross-examination that he was not "a party to all those negotiations," *id.* at 579, the affidavit was consistent with his trial

---

[4]    As noted earlier, the $850,000 loan was only a relatively small part of the entire February 7, 1991 loan agreement.

testimony and could not be considered newly discovered evidence. Defendants also contend that the evidence that Rhoades was banned from the banking industry by the FDIC is newly discovered and warrants a new trial. The district court found that this evidence could only be used to impeach Rhoades and therefore could not justify a new trial. We also note that, given our previous discussion regarding the basis of defendants' convictions, presentation of this evidence would not likely result in an acquittal. We thus conclude that the court did not abuse its discretion in denying the motion for a new trial on these bases.

Defendants also contend that David Herndon's answers to interrogatories in separate litigation, in which he indicated that the source and amount of funds the Sapps could borrow to pay the First State debt did not matter to him, is newly discovered evidence warranting a new trial. The district court found that the answers to the interrogatories were not inconsistent with Herndon's trial testimony. Additionally, as we noted earlier, other evidence to this effect was presented at trial, and this evidence would therefore be merely cumulative. Again, defendants have failed to demonstrate that the court abused its discretion in denying a new trial on this basis.

6. *Request for discovery and evidentiary hearing*

Defendants contend that the district court should have allowed them to conduct discovery on certain issues and should have held an evidentiary hearing. Both of these matters are subject to the district court's discretion. *See Castro v. Ward*, 138 F.3d 810, 833 (10th Cir.) (discovery), *cert. denied*, No. 98-5936, 1998 WL 635781 (U.S. Nov. 2, 1998); *United States v. Whalen*, 976 F.2d 1346, 1348 (10th Cir. 1992) (evidentiary hearing). Defendants have identified no areas of discovery likely to affect our preceding analysis. Similarly, they have failed to identify any material factual issues in dispute that would warrant an evidentiary hearing. We therefore conclude that the district court did not abuse its discretion in denying their requests for discovery and an evidentiary hearing.

Defendants' motion to file a reply brief is GRANTED. The judgment of the district court is AFFIRMED.

Entered for the Court

Carlos F. Lucero
Circuit Judge