**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 20 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES E. SUNDSTROM,

Defendant-Appellant.

No. 99-6290
(D.C. No. 99-CR-24-A)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **TACHA** , **PORFILIO** , and **EBEL** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

James E. Sundstrom appeals from that part of a restitution order requiring him to reimburse USAA Insurance Company (USAA) for a mortgage lien USAA purchased from Mr. Sundstrom's bank. The restitution order was issued pursuant to the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, and related to Mr. Sundstrom's conviction under 18 U.S.C. §1341 for one count of mail fraud in which he submitted fraudulent proof of loss claims to USAA following the arson of a house located on his mortgaged farm property. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Because the government failed to prove that USAA suffered a loss as defined by the VWPA, we reverse.

I.

We review de novo the legality of a restitution order, disturbing the court's factual findings only upon a showing of clear error. *United States v. Sapp*, 53 F.3d 1100, 1104 (10th Cir. 1995). The underlying facts of this case are undisputed. In February 1997, Mr. Sundstrom set fire to an uninhabitable old house located on his farm in Woodward, Oklahoma. USAA insured the farm property at the time of the fire. Mr. Sundstrom submitted fraudulent proof of loss claims to USAA in April 1997, alleging that he lost personal property that was not actually in the house when it burned. He also grossly overestimated the value of

the house. After conducting an investigation, USAA refused to pay the claims to Mr. Sundstrom.

At the time of the fire, Central National Bank held a mortgage lien of $19,651.79 on the farm property and its improvements, *see* R. Doc. 13, ex. 1, which included the uninhabited house, a cottage, and some outbuildings. Mr. Sundstrom was current on his mortgage payment both before and after the fire, having authorized the bank to automatically withdraw the mortgage payment from his checking account. In October 1997, despite the fact that the bank had not submitted a proof of loss claim under the insurance policy, and without inquiring whether the bank had in fact suffered a loss of its collateral such that the mortgage was not fully collateralized, USAA paid off the $19,651.79 balance on the mortgage and the bank assigned the lien to USAA. The bank later informed Mr. Sundstrom that it had sold the lien to USAA, but USAA never requested that Mr. Sundstrom make payments to it. *See id.* After the fire Mr. Sundstrom, who had been employed as a real estate agent, estimated the farm property to be worth $25,000. The government presented no evidence regarding the post-fire value of the farm property.

Mr. Sundstrom was not indicted for arson, but he pleaded guilty to one count of mail fraud in conjunction with making the fraudulent claims. He objected to USAA's claim for restitution of the lien amount. At his

-3-

sentencing hearing, USAA's agent testified generally that a clause in the policy insuring the farm property required USAA to pay the mortgagor bank "for the actual cash value of the loss, up to . . . their lien balance." Tr. at 13. The district court overruled Mr. Sundstrom's objection and ordered restitution of the lien amount.

## II.

Except to the extent agreed to by the parties in a plea agreement, *see* 18 U.S.C. § 3663(a)(3), restitution under the VWPA is confined to losses "caused by the conduct underlying the offense of conviction." *United States v. Brewer*, 983 F.2d 181, 184 (10th Cir. 1993). If the offense of conviction involves as an element a scheme, conspiracy, or pattern of criminal activity, the VWPA also authorizes restitution to any victim directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern of activity. 18 U.S.C. § 3663(a)(2). In determining the amount of restitution to which a victim is entitled, the court must account for any benefit received by the victim and subtract that amount from any restitution award because the VWPA authorizes only restitution for actual losses sustained by the victim. *See* 18 U.S.C. § 3664(a) (requiring a complete accounting of the victim's losses); *United States v. Guthrie*, 64 F.3d 1510, 1516 (10th Cir. 1995). In addition, only those actual losses that are directly related to and proximately caused by the criminal act of

the defendant may be reimbursed under the VWPA. *See* § 3663(a)(2) (defining "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered"); *United States v. Diamond*, 969 F.2d 961, 967-68 (10th Cir. 1992) (holding that expenses generated in recovering a victim's losses were too tangential to the underlying criminal conduct to be recoverable under the VWPA). The government bears the burden of establishing the amount of actual loss by a preponderance of the evidence. 18 U.S.C. § 3664(e).

Mr. Sundstrom first argues that the order requiring him to pay restitution for the lien is illegal because the insurance company's alleged loss in regard to the lien was caused by it "jumping the gun" and purchasing the bank's lien without a legal obligation to do so and thus was not directly or proximately caused by Mr. Sundstrom's arson or mail fraud. *Cf., e.g., Diamond*, 969 F.2d at 966 (holding that the government failed to prove that a loan extension obtained by defendant's fraudulent financial reports was the proximate cause of the bank's loss on the loan); *United States v. Tyler*, 767 F.2d 1350, 1352 (9th Cir. 1985) (reversing restitution order because government's decision to hold property for a year before selling, not defendant's criminal act, caused loss in value of property); *United States v. Vaknin*, 112 F.3d 579, 585-90 (1st Cir. 1997) (relying on *Diamond* and *Tyler* in adopting a standard of causation for restitution orders

that requires the government to show "not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)"). He also argues that the order is illegal because the government failed to prove that the bank or USAA ever suffered an actual loss because the mortgage lien was still fully collateralized after the fire and Mr. Sundstrom was current on his loan payments. We agree with both arguments.

The evidence in the record shows that USAA was contractually obligated to pay only for actual losses suffered by the bank upon demand. USAA's agent admitted that there were certain things that a lienholder had to do to assert a claim for loss under the policy: "in order for them to complete the loss and for the replacement coverage [they must] submit the necessary paperwork." Tr. at 16. USAA's agent testified that he didn't know if the bank ever made a claim for loss under the policy. Significantly, he did not know whether the bank ever even asserted that it had suffered a loss due to the fire. *Id.* at 16-17. He further testified that USAA did not ask the bank whether Mr. Sundstrom was in arrears on his mortgage payments when it decided to purchase the mortgage lien; it only inquired about the balance due on the note. *Id.* at 17. The agent admitted that if the district court did not include the lien in the restitution order, USAA had

a civil remedy under the mortgage and Mr. Sundstrom was obligated to continue making the mortgage payments to it.     *Id.*

The record indicates that USAA has a fully collateralized lien against marketable real property, and the government has provided no evidence that USAA's lien is not worth what it paid for it.  Even a fraudulently-obtained loan can cause no actual loss to a lender if it is fully collateralized.     *See United States v. Haddock* , 12 F.3d 950, 961 (10th Cir. 1993) (holding that, for sentencing purposes, the net loss to a lender when a loan has been fraudulently obtained is the unpaid amount of the loan minus the value of the collateral at the time of the sentencing).

The government failed to provide any evidence whatsoever (1) that the bank made a claim on the insurance policy that imposed a duty on the insurance company to purchase the lien or (2) that the lien was not still fully collateralized after the fire.  Thus, the government failed to establish direct and actual loss by a preponderance of the evidence.

The judgment of the United States District Court for the Western District of Oklahoma is REVERSED in part and we REMAND with instructions to the

district court to subtract from the restitution obligation the $19,651.79 that USAA paid for the mortgage lien.

Entered for the Court


Deanell Reece Tacha
Circuit Judge