financial responsibilities. There was sufficient evidence for the jury to find she aided and abetted Mariani in her illegal actions, as well as participating in bank fraud herself.

ISSUE 7:   *Appellant argues her trial counsel was ineffective.*

Appellant argues her trial counsel was ineffective because he failed to object to the jury instructions as discussed above. Appellant has not conducted any analysis for the court to demonstrate how trial counsel's conduct satisfies the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). Since we have held that the instructions were adequate, we also find this argument to be without merit.

Therefore, for the reasons cited above, the Judgment of the District Court is hereby **AFFIRMED**.

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0368P (6th Cir.)
File Name: 01a0368p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.                                                    No. 00-4230

JUSTINE THERESA EVERETT,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-00363—Solomon Oliver, Jr., District Judge.

Submitted: June 6, 2001

Decided and Filed: October 12, 2001

Before: BATCHELDER and MOORE, Circuit Judges;
BERTELSMAN, District Judge.

---

**COUNSEL**

**ON BRIEF:** Gordon S. Friedman, FRIEDMAN & GILBERT, Cleveland, Ohio, for Appellant. Thomas E. Getz,

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

BERTELSMAN, District Judge.   In this appeal, Justine Theresa Everett seeks a reversal of her conviction on one count of bank fraud and complicity.

### *PROCEDURAL AND FACTUAL BACKGROUND*

The Appellant was a certified public accountant.   From 1988 until 1992 Appellant worked for an accounting firm. While at the firm, she worked on the account for Mark Stein's Expert Auto Body, Inc.  In May 1992 Appellant left the firm to establish her own practice.  At Stein's request, Appellant continued to do accounting work for his business.

Co-defendant Kathy Mariani worked for the same accounting firm as Appellant. Appellant introduced Mariani to Stein. At about the same time Appellant left the firm, Stein hired Mariani  to work for him as a bookkeeper.  Mariani's duties included doing accounts receivable, accounts payable, and recording all the checks written into a check register. Mariani was a co-signer on Stein's business accounts, but she generally signed Stein's name to checks.  Mariani testified that Appellant was never listed with the bank as an authorized signer on the account.  On occasion, however, Stein and/or Mariani told Appellant she could sign Stein's name to specific checks.[1]

When Mariani quit her job at Stein's Auto Body, her replacement discovered discrepancies in the business records compared to the bank records.  She obtained copies of the checks in question.  One check, in the amount of $5,000, was

---

[1]JA 97-98.

---

Stein was the owner of the business, and the report listed the checks at issue and the charge noted as theft/larceny. Therefore, the statement was not improper.

ISSUE 5:  *Appellant argues that the jury instructions were improper.*

Appellant argues that the court erred in giving instructions that included both specific and general terms in identifying who the intended victim needed to be.  She argues that, although the court specifically instructed the jury of the essential elements of the crime to include the element that the defendant intended to defraud Bank One, it then gave general instructions referring to depriving *another* or defrauding *anyone*, instead of specifying Bank One.  In light of the interpretation of § 1344, we have adopted above, it is apparent that the instructions were sufficient.

ISSUE 6:  *Appellant argues she should not have been convicted of complicity.*

Appellant argues her conviction on complicity must be reversed because count two was dismissed and count one dealt only with her conduct, and she cannot be found guilty of aiding and abetting herself.

A review of the indictment illustrates that count one alleged violations of both the bank fraud and aiding and abetting statutes.  The count also outlines the conduct of both the Appellant and Mariani.

Mariani testified that she and the Appellant made false entries and altered reports to conceal their activity. Mariani also testified that she was not worried because the Appellant was also involved. Mariani testified that Appellant helped her move all the old financial records, cancelled checks, check registers, bank statements, etc., out of the business so their scheme would not be detected.  Appellant took the records to Florida and placed them in a storage unit.  Appellant was the accountant for the business and responsible for reconciling checkbooks, bank statements, preparing tax returns, and other

was presented by Mariani that implicated Appellant in schemes to defraud. Given the evidence of Appellant's guilt, it is not likely that the jury's verdict was substantially swayed by the failure of the trial court to give a limiting instruction on the use of the Rule 404(b) evidence.

ISSUE 4: *Appellant argues her rights were violated when the prosecutor made statements in closing argument about what a non-testifying witness would have said.*

Appellant argues her rights were violated when the prosecutor stated in his rebuttal statement what Stein, a non-testifying witness, would have said if he had testified. A prosecutor's statement is improper if it brings to the jury facts which are not in evidence and prejudicial. *United States v. Wiedyk,* 71 F.3d 602 (6th Cir. 1995).

In the case at bar, the prosecutor made the following statement in response to defense counsel's closing statement about why Stein, the owner of the business at issue, did not appear to testify:

They bring up Mark Stein. But as you already heard, Mark Stein is irrelevant to this case. He could tell you two things. One of them is that he trusted the defendant implicitly and that he didn't pay enough attention to his business. That much is obvious from the fact that we're here.

The second thing he could tell you is that the checks that ended up being deposited into her account were forgeries. He told you that through Government's Exhibit 19, the police report. . . .

(JA 335). The trial court overruled the defense counsel's objection stating the statement related to something in evidence: the police report.

The prosecutor's statement does not bring any new facts to the jury. The officer testified that a complaint was made, that Expert Auto Body was the complainant, testimony established

made payable to the Appellant, but recorded in the check registry as a payment to a vendor. The other checks were connected to Mariani. After Stein reported the theft to the police, an FBI financial analyst reviewed Stein's bank records and bookkeeping records. He found negotiated checks totaling $96,648.47 that had been issued to the Appellant or made payable to cash and endorsed by Appellant. The agent testified that nearly all of the checks were issued out of proper sequence, falsely recorded in the check registers or not recorded at all, and many contained incorrect information in the memo section of the check.

As a result of the FBI's investigation, Appellant and Mariani were jointly charged in a two count indictment. Both counts charged bank fraud and complicity, although each count concerned a different bank. Prior to trial, Mariani pleaded guilty to bank fraud for her conduct in writing unauthorized checks to herself. Appellant proceeded to trial.

At trial, the government introduced four checks made payable to Appellant to which Appellant admitted to signing Stein's name. Appellant testified that these four checks were sent to her post-dated and without signature for her services. When she questioned Mariani about the unsigned checks, Appellant stated that Mariani told her she could sign Stein's name to the checks herself.

Mariani testified that she knew Appellant was writing unauthorized checks to herself because she saw her do it, and she also saw cancelled checks written to the Appellant, by the Appellant, that Mariani knew were unauthorized. Mariani testified that Appellant had asked her on many occasions to issue checks for services Mariani knew Appellant had not performed. After issuing an unauthorized check, either Mariani or Appellant would enter false information in the check register to conceal the illegitimacy of the checks. Mariani also explained that before she left her employment with Stein, she and Appellant packed up all the bank records and old checks so that Appellant could take them to Florida with her. Mariani testified that the purpose of moving the

bank records and checks was to prevent detection of their scheme.

After presentation of the evidence, the trial court granted Appellant's motion to dismiss count two of the indictment because the checks in question in count two had been signed by Mariani, an authorized signatory. Thus, the bank would not be subject to a risk of loss even if the checks were written for an unauthorized purpose. The trial court sent count one to the jury. The jury returned a verdict of guilty, and Appellant was sentenced to fourteen months of incarceration. Appellant now appeals her conviction.

### DISCUSSION

Appellant makes seven arguments as to why her conviction should be reversed. We will discuss each issue in turn.

ISSUE 1:   *Appellant argues she was authorized to sign Stein's name, thus there was no bank fraud.*

Appellant argues that Stein, owner of the auto body shop, authorized her to sign his name on the checks in question. She argues that the signing of another's name, when authorized by that person to do so, is not forgery and cannot be a violation of the Bank Fraud Statute, 18 U.S.C. § 1344 (2000).[2]

Three elements are required for a conviction for bank fraud under 18 U.S.C. § 1344: (1) that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) that the defendant did so with the intent to defraud; and (3) that the financial institution was

---

[2] 18 U.S.C. § 1344 reads: "Whoever knowingly executes, or attempts to execute, a scheme or artifice – (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

(JA 338-339). There is no specific statement as to what the jury could use the evidence at issue for, or even what evidence was restricted to a specific purpose. Thus, the jury instructions were not adequate to limit the jury's use of the Rule 404(b) evidence.

Nevertheless, the error is harmless. This court has held that Rule 404(b) is not applicable where the challenged evidence is "inextricably intertwined" with evidence of the crime charged. *United States v. Barnes*, 49 F.3d 1144 (6th Cir. 1995). Here, the Appellant argues that she was entitled to all the money she received from the business as payment for her services. The items of evidence being challenged, checks signed by Mariani, are part of the total number of checks going into the Appellant's accounts and show the amount Appellant received, legitimately or otherwise, from the business for particular time periods. Mariani testified that Appellant was part of the scheme and was also taking money from the business. The evidence of the checks, therefore, was admissible as being inextricably intertwined because it formed a part of the witnesses' accounts (both Appellant's testimony and Mariani's testimony) of the circumstances surrounding the offense. *Id.*

In addition, "[i]n determining whether an error is harmless, [the court] must take account of what the error meant to [the jury], not singled out and standing alone, but in relation to all else that happened." *United States v. Spikes*, 158 F.3d 913 (6th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999) (*quoting United States v. Merriweather*, 78 F.3d 1070, 1079 (6th Cir. 1996)) (internal quotation marks omitted).

In this case the jury was also presented with evidence that Appellant received $96,648.47 from the business. Nearly all of the checks were issued out of proper sequence, falsely recorded in the check registers or not recorded at all. Testimony was presented that the amounts of the checks received by the Appellant far exceeded the amounts entered in the business ledger for accounting fees, the business tax returns, and the Form 1099 issued to Appellant. Testimony

This interpretation makes the bank fraud statute more harmonious with the mail and wire fraud statutes, which require only that the mail or wire communication be used to facilitate the fraud. This approach also is more in accord with the language of § 1344(2).

ISSUE 3:   *Appellant argues the trial court erred in admitting evidence of circumstantial evidence without giving a limiting instruction.*

Appellant argues that the trial court erred in admitting evidence that was relevant to the dismissed count of bank fraud without giving a specific limiting instruction. The evidence at issue included checks and a summary of the checks that related to the checks signed by Mariani. The trial court permitted the evidence to go to the jury, even though count two was dismissed, for use as Fed. R. Evid. 404(b) evidence and as circumstantial evidence.

When admitting evidence under Rule 404(b), the court "must carefully identify, in its instructions to the jury, the specific factor named in the rule that is relied upon to justify admission of the other-acts evidence, explain why that factor is material, and warn the jurors against using the evidence to draw the inferences expressly forbidden in the first sentence of Rule 404(b)". *United States v. Spikes*, 158 F.3d 913, 929 (6th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999) (*quoting United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994)).

Here, the evidence was proper Rule 404(b) evidence to show plan, opportunity, knowledge, preparation, motive, and absence of mistake. The court did not, however, give limiting instructions on how the evidence was to be used. The court told the jury

"I may have told you through the course of the trial that I admitted certain testimony and certain exhibits for a limited purpose. To the extent I did that, you may consider such evidence only for the specific limited purpose for which it was admitted."

insured by the FDIC. *United States v. Hoglund*, 178 F.3d 410 (6th Cir. 1999). A conviction under § 1344 should be reversed only, if viewing the record as a whole, the judgment is not supported by substantial and competent evidence. *United States v. Mann*, 234 F.3d 1270, 2000 WL 1597824 (6th Cir. 2000)(unpublished), *cert. denied*, __U.S.__, 121 S. Ct. 1608 (2001).

Appellant argues that because she was authorized to sign Stein's name to checks, she cannot be guilty of bank fraud even if she was not entitled to the funds. Stein did not testify as to whether he consented to Appellant's signing of his name to the checks at issue. However, the police report was introduced which stated a complaint was made against Appellant and listed Stein as the owner of the business. The report also indicated that the loss was due to counterfeit/forged negotiable instruments and identified the specific checks by number.

The cases cited by the Appellant are distinguishable from the case at bar. In both *United States v. Laljie*, 184 F.3d 180 (2d Cir. 1999), and *United States v. Rodriguez*, 140 F.3d 163 (2d Cir. 1998), the checks found not to constitute bank fraud contained the authentic signatures of the persons listed as authorized signatories with the bank. Here, Appellant was not listed as an authorized signer with the bank and, in fact, she did not sign her own name but that of Stein. There was sufficient evidence, i.e., the police report and the testimony of Mariani, to indicate Appellant did not have authority to sign the checks at issue. The evidence on the issue was submitted to the jury, including the testimony of both the Appellant and Mariani. The evidence was sufficient for a rational juror to find Appellant signed the checks without authorization, and the first issue is without merit.

ISSUE 2:   *Appellant argues there was no evidence that she specifically intended to defraud a federally insured bank.*

Appellant argues that the United States has failed to prove the specific intent required for a conviction under 18 U.S.C.

§ 1344, namely, that the Appellant intended to defraud a federally insured bank, or at least put the bank at a risk of loss. Appellant acknowledges that there is evidence that she intended to defraud her client, but that the bank was at no risk of loss because she was authorized to sign her client's name to checks.

The Circuits are not in accord as to the intent required to violate § 1344.[3] The Sixth Circuit precedents are also not entirely consistent. In *United States v. Walker*, 871 F.2d 1298, 1305 n. 6 (6th Cir. 1989), the court noted that "bank fraud requires only a fraudulent statement designed to influence a bank's action." However, in *United States v. Hoglund*, 178 F.3d 410, 413 (6th Cir. 1999), the court stated that "a defendant need not have exposed a bank to a risk of loss as an element of bank fraud," but an instruction stating "that the defendant must have intended to put a bank at a risk of loss, was sufficient to support a conviction for bank fraud." The court characterized risk of loss as "merely one way of establishing intent to defraud in bank fraud cases."

In *United States v. Kropp*, 132 F.3d 34, 1997 WL 735331 at **2 (6th Cir. 1997), however, the court stated that it was

---

[3] *United States v. McCauley*, 253 F.3d 815 (5th Cir. 2001) (must establish bank placed at either risk of loss or civil liability); *United States v. Lamarre*, 248 F.3d 642 (7th Cir.), *cert. denied*, __ U.S. __, 121 S. Ct. 22 (2001) (specific intent to defraud requires defendant act willfully with specific intent to deceive or cheat bank); *United States v. Kenrick*, 221 F.3d 19 (1st Cir.), *cert. denied*, 531 U.S. 1042 (2000) (U.S. required to establish intent to deceive bank in order to obtain money or other property from it; intent to harm not required); *United States v. Sprick*, 233 F.3d 845 (5th Cir. 2000) (bank must be placed at risk of civil liability); *United States v. Akers*, 215 F.3d 1089 (10th Cir.), *cert. denied*, 531 U.S. 1023 (2000) (potential risk of loss is not separate element); *United States v. Laljie*, 184 F.3d 180 (2d Cir. 1999) (actual or potential loss not required, evidence of intent to expose bank to loss, such as by presentation of forgery sufficient); *United States v. Jacobs*, 117 F.3d 82 (2d Cir. 1997) (must establish bank exposed to risk of loss); *United States v. Brandon*, 17 F.3d 409, 426 (1st Cir. 1994) (defendant must knowingly execute a fraudulent scheme which exposed a federally insured bank to a risk of loss).

---

not a defense that the defendant "may not have intended to cause the bank to lose any money; it is sufficient that he was shown to have intended to facilitate the transfer of bank funds" in pursuit of a fraudulent scheme. *Kropp* also held that "the government need not show that the victim bank suffered any loss from the crime." *Id.* at **3.

We believe that *Kropp* is correct and that to have the specific intent required for bank fraud the defendant need not have put the bank at risk of loss in the usual sense or intended to do so. It is sufficient if the defendant in the course of committing fraud on *someone* causes a federally insured bank to transfer funds under its possession and control. *See* 18 U.S.C. § 1344(2) (2000).

It has been stated that the purpose of § 1344 is to protect the federal government's interest as an insurer of financial institutions.[4] Thus, even if the Appellant did not intend to defraud the bank, causing a bank to transfer funds pursuant to a fraudulent scheme reduces the funds the bank has available for its loans and other activities and almost inevitably causes it some loss.

That is not to say that in cases where the bank has minimal involvement, such as where a swindler deceives someone into voluntarily writing checks to the swindler on a good account, the government would not be better advised to proceed under the wire or mail fraud statutes. Nevertheless, we believe that the minimal involvement of the bank specified above is all that is required, if the specific intent to defraud someone is present. In such situations, the federally insured bank will almost always be placed at some risk of loss, if only in the loss of some of the deposits, although the perpetrator may intend to defraud someone other than the bank. We believe this is enough to bring the fraudulent scheme or act within the ambit of the bank fraud statute, the purpose of which is to protect the federally insured deposits.

---

[4] *United States v. Laljie*, 184 F.3d 180, 189 (2d Cir. 1999).